Our fourth case for argument this morning is B.D. v. Samsung SDI. Mr. Bolling, whenever you're ready, come on up. Good morning, may it please the Court, my name is Neal Bolling, I am counsel for Appellant Samsung SDI Company. This is a products liability case in which the plaintiff alleges that he was injured when an 18650 lithium ion cell manufactured by SDI exploded in an e-cigarette device in his pocket and he then sustained burns. Mr. Bolling, if the plaintiff was instead injured by a battery that was part of a power tool and not the E6, as I understand SDI sells batteries to component manufacturers that put them in battery packs and then some of them are sold in power tools. So if the fact scenario was that the plaintiff was injured by a battery pack exploding in a power tool, in that case, would you concede personal jurisdiction in this case? No, we would not. For the reason, Your Honor, that the stream of commerce theory that the district court embraced and upon which plaintiff relies in his briefing requires an expectation that the forum will, that the product will arrive in the forum and there has to be. So, okay, so let's say that, hypothetically speaking, okay, let's say that discovery would show that Samsung sold these batteries to a component manufacturer and as part of that give and take, the component, Samsung asks them, okay, where do you sell these? And Samsung says, oh, we sell them to Black & Decker. And Black & Decker, by the way, does business throughout all 50 states. Okay, and Samsung's like, that's great because we want to grow our market in the United States. Would that be sufficient? It would not, Your Honor, and again, there still has to be some minimum contact. There has to be some effort by the manufacturer to reach out to the forum and that's what's missing. And what case are you relying on for that kind of, I guess some people call it stream of commerce plus or enhanced stream of commerce. What cases are you relying upon? Well, actually, Your Honor, stream of commerce never eliminated the requirement of minimum contacts or reaching out to the forum. It was simply one way that that minimum contact could be shown. So simply selling a product to an intermediary who then incorporates the product into its own product and then sells it in some forum that is not the intent or the expectation of the original manufacturer. That is not minimum contacts. It's not any kind of contact at all. So you're saying it's not enough that Samsung or SDI knew that that's where the products were going to. SDI had to somehow intend or actively market that in the forum state? Actually, a couple of things, Your Honor, in response. The evidence before, actually, the evidence before the district court. I guess you're talking about just kind of, because as I understood, there hasn't been any jurisdictional discovery in this case, right? Right. So if jurisdictional discovery were to show that Samsung knew that these components were going to go to Black & Decker and they knew that Black & Decker, in fact, they wanted Black & Decker to incorporate them because Black & Decker enjoys a large market share in the United States, including in Indiana. You're saying that that's not sufficient? That is not sufficient, Your Honor. And I think that the Supreme Court decision in the Caspro is informative on that point. But as Justice Barrett wrote in the Seventh Circuit case that, whose name I completely forget at the moment, she said that that plurality decision was not controlling, right? She recognized it wasn't controlling. Yes. But even without looking at any of the opinions, if we look at the formulation of the personal jurisdiction that the New Jersey Supreme Court articulated that was rejected by a majority of the Supreme Court, that is exactly the formulation that there was a majority for rejecting. And what the New Jersey Supreme Court said is that it is sufficient for jurisdiction if a manufacturer knows or should know that its products are distributed through a national distribution system that might lead to those products being sold in any of the 50 states. That was what a majority of the Supreme Court found to be wrong. Now I understand that there was not a majority for any particular opinion, but there was a majority for rejecting that particular formulation from the New Jersey Supreme Court. And that I believe would be the scenario that Your Honor was asking about, where SDI sells to Black & Decker with the understanding that Black & Decker wants to maximize its sales, and therefore it's possible that Black & Decker's products may end up in one of the 50 states. So there's a variety of verbal formulations here. The Sheehan case, recent case from our court, express aiming is one phrase, near injury even if predictable, not a sufficient connection. To follow up on Judge Lee's questions, what would be enough? Would it be enough if the lithium battery packs were sold directly to distributors in Indiana? Your Honor, I would not concede that that would be enough, but that would certainly be a different fact pattern, a very different fact pattern than what we have here. I'm sorry, did you say you concede that you don't think that is enough? I cannot concede that that would be enough for personal jurisdiction because, again, the other complicating factor that we have here is that plaintiff, if not plaintiff himself, somebody way outside of several steps removed from SDI had to have misdirected this item. Therefore, even if SDI directed or shipped its 18650 lithium ion cell to Indiana, which it does not, and that's uncontradicted, but even if it did, there is still a problem with the fact that the injury that resulted here was from somebody deliberately misdirecting the product from its expected use. But isn't that happening ubiquitously? These batteries are available everywhere, as I understand it, and the District Judge in denying the jurisdictional dismissal motion mentioned the ubiquity of the availability of these batteries, individually, not just in battery packs or incorporated into other products, as in Judge Lee's hypothetical. Yes, Your Honor, and with all respect to the District Court, I don't think that that evidence of ubiquity was in the record. Well, I know this was a jurisdictional dismissal motion, but there are allegations that these batteries are available everywhere, and this particular battery was purchased in the form in which it found its way into the pocket of the injured plaintiff from a retailer in Indiana. So one of your distributors sold it downstream. Well, there's no question. Actually, Your Honor, if I may first speak to the ubiquity issue. Ubiquity is not the standard and never has been the standard. None of our Supreme Court precedents... It goes to the question of whether Samsung SDI was exploiting this market nationwide by selling its batteries into the stream, or delivering its batteries into the stream of commerce in the United States with the knowledge that they would be incorporated into products, as in the Black and Decker example, or sold at retail in the form of throughout the United States in all 50 states. I mean, if it's common knowledge that you can get these batteries everywhere, then it's reasonable to infer from that kind of allegation that Samsung SDI was aware of that and was part of its marketing strategy. Yes, Your Honor, and a couple of things I'd like to say about that. First of all, if we look at Mr. Shin's declaration, which was ECF number 9-1. I think it's at page 17 in the supplemental appendix. Mr. Shin makes clear that, and this is uncontradicted as well, that SDI has no way to know where these 18650 cells will show up having been incorporated into some other product. It has no control over that. Once the sale is consummated, SDI has no expectation whatsoever as to where the purchaser is going to sell its product after it has been incorporated. Is that remotely plausible? I'm sorry? Is that plausible? Yes, actually it is, Your Honor. Samsung SDI is producing these batteries by the millions and marketing them worldwide and is the major supplier of these batteries. Is it plausible to think that the company doesn't know that they're going to end up in all 50 states and the United States? Two things, Your Honor. First of all, I would have to contend that it is plausible. And number two, even if SDI could foresee that its 18650 cells would end up in Indiana, as our Supreme Court has said, foreseeability has never been a sufficient criterion for personal jurisdiction. It has never been adequate to show minimum contacts that are necessary for a specific personal jurisdiction. Thank you. Counsel, if I can ask you, kind of on a different tact. So you are arguing, as I understand it, SDI is arguing, that there are no minimum contacts here. You are not arguing, and that's where you're putting all of your, that's the basket in which you're putting all of your eggs, right? You're not asking, for example, in Asahi, the Supreme Court kind of did a two-step, right? It said, well, you know, were there minimum contacts? And even if there were minimum contacts, we're still going to look at the case for kind of overall reasonableness, you know? And I take it that from your briefs and from your argument that SDI is not relying upon that second step. It's just confining its arguments to the first step. Well, in the briefing, that's true. For this reason, Your Honour, the reasonableness is the third prong, but it doesn't even come into play unless the first two are satisfied. In other words, it's not a way, if there is no purposeful availment and no relatedness to the purposeful availment, we're done. And that's what I mean. I mean, that is your full argument. You're not arguing the alternative that if there were purposeful availment, that personal jurisdiction would nevertheless be unreasonable. I think it would still be unreasonable, yes. But I'm saying in your briefs, I don't see that argument. It may not be explicitly in the brief. I think it was in the reply brief, Your Honour. No, I agree. It is not. I don't believe it appears in the opening brief. And if I may, Your Honour, just to be clear, we're not suggesting that SDI does not purposely avail itself of doing business in Indiana. It does. It's simply a different product. And again, that's a whole different ballgame.  But there is no relationship whatsoever between the two. Between plaintiff's injury and that product. Your Honour, I think that I am down to two, coming up on two minutes, and I'd like to reserve the remainder for rebuttal. That's fine. Thank you. Ms. Jomari. Good morning, Your Honours. May it please the Court. Through its distribution chain, Samsung is intentionally sending millions of 18650 batteries into Indiana. BD is an Indiana resident who purchased a Samsung 18650 battery in Indiana and was injured in Indiana when that battery blew up in his pocket. That's all that's needed to resolve this case. Under this Court's stream-of-commerce precedent, Samsung purposely availed itself of the privilege of doing business in Indiana by sending 18650s to Indiana. This Court has repeatedly held that when a company sends its product into the stream of commerce with the knowledge that its products will reach a foreign state's consumers, that company has purposely availed itself of doing business in the state. So what would be the stopping point, then? When would it not be personal jurisdiction? With reference to...? The battery. When would states... When would personal jurisdiction not be satisfied here? So, for a company like Samsung that is worth $350 billion and is flooding the U.S. market with these 18650 batteries, I believe it's perfectly reasonable for Samsung to have to answer in every state if it knows those batteries are going to every state, if those batteries are causing injury to the state's residents. Is there any stopping point whatsoever? With a company like Samsung that is flooding the U.S. market with its products? I mean, the stopping point, Your Honor, would be Samsung restructuring its business model. Samsung restructuring its business model to exit a state. The Supreme Court has repeatedly emphasized in its stream of commerce, in its personal jurisdiction precedent, that if a company doesn't want to avail itself of the privilege of doing business in a state, they can exit the state's market. How would they do so here? Sure. So Samsung, in its contracts and connections with distributors, could write into its contracts that it doesn't want its batteries sold in Indiana. But I think the one thing that Ford makes clear is that the one thing... And if Samsung did that, would you agree at that point that there's no personal jurisdiction for SDI in this case? I think that would be a much more difficult case if Samsung wrote into its contracts that it didn't want its batteries to go to Indiana. That said, this Court's stream of commerce precedent, the key to it is knowledge. That's what it looks at. So this Court could potentially still find that Samsung had purposely availed itself of the forum state. But I do think that the one thing Ford makes clear is what a company cannot do is sell thousands of exploding batteries into Indiana, and then when someone's hurt by one of them, tell them that they have to go sue in South Korea. Do we know where Samsung's distributors are located in the United States? I don't know where Samsung's distributors are. Because you haven't had that discovery. We have not had discovery, Your Honor. And that's not in the declaration of the... I do not believe it is in the Shin Declaration. Shin Declaration, okay. Under the U.S. Supreme Court's decision in Ford, BD's suit is sufficiently related to Samsung's contacts with Indiana, and that's because Ford held that when a manufacturer sends its product into a state and that product injures a resident of the state, that is specific enough to satisfy specific jurisdiction. I want to make one point on the discussion of the stream of commerce precedent, and then I'd love to make a few points on relatedness. Counsel, if I could just... I'm sorry. If I could just follow up on what you said about and in answer to Judge Brennan's question about what Samsung can do. And so you said that if Samsung wrote into its contracts that we don't want our batteries or any products that contain our batteries to be sold in Indiana, that you said that would be a much harder case. How is that... In your mind, how is that different from Samsung putting in their contracts we do not want our batteries sold in any shape or form anywhere related to E6? Yes. So I think that is quite different, and the reason is that the purpose of the Texas Supreme Court, unanimously recognized in LGBT Morgan, which we cited in our 28J, is to determine whether the forum state may exercise power over a defendant consistent with the due process clause. So really, it's a question of state power. State power is key. So when a company participates in the state market for a product, it enjoys the benefits and protections of the state's laws. Those benefits and protections then come with a reciprocal obligation, which is to show up in court when its product injures a state resident. So in that situation that you laid out, you would see Samsung try not to participate in the state's market. And the relevant inquiry is Samsung's connection to the state. I'd like to know... You'd have, on the merits, a counterclaim against the distributor for violating the distribution instructions. Correct. Under state law. Yeah. So as to the stream of commerce discussion that we've had here today, I'd like to note that Samsung is essentially rejecting the Seventh Circuit stream of commerce theory. The Seventh Circuit has repeatedly held that when a company sends its product to the stream of commerce, with the knowledge that its products will reach a forum state, that is enough for purposeful availment. Let me follow up on that, because our law seems to have a criterion for knowledge, which you're embracing, then a criterion for targeting. And even in these battery cases that are across the country, those that rely on knowledge might find personal jurisdiction, but those that rely on targeting do not. Why is this not a targeting case? Well, I believe that the ones that are specifically talking about targeting, you're referring to the lithium-ion exploding battery cases in particular, the ones that focus on targeting are stream of commerce jurisdictions, stream of commerce plus jurisdictions, so they abide by Justice O'Connor's concurrence. But this circuit, as then Judge Barrett pointed out in the JST oral argument, and suggested in that opinion, abides by pure stream of commerce. But then we have Ford and now we've got the Sheehan case from 2022. Is the Sheehan case a targeting case? So, I don't believe that the Sheehan case touches upon stream of commerce at all. I know that it discusses stream of commerce cases in passing, but it relies on clear guidance from Walden, Calder,  So I don't believe that anything that it says about stream of commerce, this is outcome determinative. Though I will say that it did seem like that case was quoting sections that come from stream of commerce concurrences, stream of commerce plus concurrences, not stream of commerce. But I don't think that the passing discussion in that case can overcome years of precedence the contrary. Is there a proof problem here in that the Sheehan declaration says SDI never shipped, sold, distributed, marketed or otherwise targeted and the plaintiff responds only with a complaint? Or does that go to the request for further discovery? A little bit of both, but I really don't think that there is that problem here. We've alleged in the complaint that Samsung had, quote, intent and knowledge to sell to consumers in Indiana indirectly through its distributors and other companies. And that's at SA6 paragraph 19. And everything we've seen, everything we've been able to collect really supports that Samsung is aware its 18650s are reaching Indiana. We've submitted evidence indicating that Samsung sells its 18650s to companies like Black & Decker and Milwaukee and that's at SA151 and SA150. You can see the battery packs there and they very clearly show Samsung 18650 batteries. And we've shown evidence that those batteries are then in products that are available at the Indian Depot. So to your question about the Shin Declaration in particular, we believe we can rely on the allegations and evidence because Samsung doesn't actually dispute it. The Shin Declaration disputes physical presence. If you look at SA18 and 19, it says we don't have board meetings. It says we don't pay taxes in Indiana. It says various other things about direct connections to Indiana. And then it goes on on SA23 to say we don't make direct sales in Indiana and we don't market within the state. But what conspicuously that declaration does not deny is paragraph 19 of the complaint or any of the supporting evidence that BD has put on the table here. And Samsung never has, despite having opportunity after opportunity to do so in its briefs even, say that it did not know that its batteries were reaching Indiana through the stream of commerce by being incorporated into various power tools that are widely available across the state. Counsel, what seems to be lacking though in the record, at least kind of when I looked at, is what goes to Chief Judge Sykes' question, which is how much what Samsung or Samsung SDI knew about its use of batteries in the e-cigarette area and what it did to try to address its concerns about that, to the extent it had any concerns, or whether you know, I guess one might hypothetically say it might have turned a blind eye to that because of how profitable its batteries are. I mean, I don't know. Right? That's all, but none of that is in the record. And it seems like since the cause of action is arising out of battery use in e-cigarettes, it seems like the facts that Chief Judge Sykes was asking about are particularly relevant to this inquiry, and that's just really nowhere in the record. And so doesn't that support a notion that, you know, given this, the lacuna of evidence in this particular very relevant area, perhaps some jurisdictional discovery with regard to that issue is necessary to inform the court with regard to what Samsung did or did not know about the e-cigarette business use of its batteries. So if the court disagrees with us today, we would certainly like to have jurisdictional discovery, but I think that the best way to think about the issue that you're raising, knowledge about the e-cigarette market, what Samsung was doing with respect to this e-cigarette market, is not a purposeful availment issue. It's a relatedness issue. I think that Samsung has very clearly purposefully availed itself of doing business in Indiana with relation to 18650s because it, through its distribution chain, indirectly, which has always been a way of purposely availing yourself of a forum since Volkswagen, has sent its batteries to Indiana. And this circuit has repeatedly adhered to Gray v. American case. And there, a manufacturer in one state sent its component part to a manufacturer in another state and that company in the next state sent the good into the forum state, which was Illinois. And there, there was minimum contacts because the component part manufacturer knew that in the larger, in the machine, that its component part was going to get to the forum state. So I think there are certainly contacts here and the issue that you are raising, but please correct me if you disagree, the issue that you're raising really goes to relatedness. And the reason why I don't think that there's a relatedness problem here really goes back to what I was saying before, which was the purpose of personal jurisdiction, the constitutional basis of this entire doctrine, which is state power. And the idea that when we look at targeting, when we look at stream of commerce, when we look at all of these things, we are focused on the defendant's contacts with the forum state as a whole. If you look to Ford, if you look to prior Supreme Court case law, what it is referring to is the state's market. And why it's referring to the state's market is because of this reciprocal obligation that kicks in as soon as a company like Samsung is availing itself of the state market. I think if you look at Walden, you'll see that it says the minimum context analysis looks to the defendant's contacts with the forum state itself, and that's reflected in a lot of other case law. And that's why the Supreme Court has always held, and Ford confirms, that sending a product into the state is enough for the state to entertain a claim that a resident of the state is injured by the product. In the specific context of exploding 18650 batteries alone, in the last year, Samsung's contrary argument has been rejected by the Sixth Circuit, the Texas Supreme Court, the Mississippi Supreme Court, and a number of intermediate courts. All of those cases upheld that Samsung's intent to only reach particular segments of the 18650 market really isn't a jurisdictional question. It's a question for the merits. It's certainly a defense on the merits in a product liability case. But there's no support in the U.S. Supreme Court or in this court's case law for the notion that it has constitutional significance. I see that my time is running out. I have two quick points that I want to make, if possible. The first is, Judge Lee, you pointed out a hypothetical about a Samsung battery exploding in a power drill. I think that that hypothetical really shows why the situation is... Samsung claims that it couldn't have anticipated the situation, but if an Indiana resident went to Home Depot, bought a black and Decker power drill, took out the 18650 battery, and was walking, perhaps, to his vacuum to put it in there, because we know these are interchangeable, and the battery exploded, I don't think there could be a reasonable debate about whether there would be personal jurisdiction there. There's no constitutionally material distinction between that case and this one, and that's because personal jurisdiction at its core is about a defendant's right to the sovereign state, not what a defendant might hope or expect about its products once those products are within the state's borders. And just a last point to end on, Your Honors. I just want to emphasize that adopting Samsung's rule would have some really troubling consequences. If unauthorized use precludes jurisdiction, a company couldn't be sued when a child ingests a drug that's intended only for adults. And if the defendant's intended sub-market matters, someone couldn't bring a wrongful death suit for the recreational use of a prescription drug, like OxyContin. Purdue Pharmaceuticals could simply say we never served that sub-market. And here, with a manufacturer that floods a state with millions of exploding batteries, people like BD, who are injured by a product sold all across the state, would have to resort to the courts of South Korea. There's nowhere in the U.S. under Samsung's theory, BD could sue. And I'll just add that the state itself would have to go to South Korea as well. If Indiana's Attorney General wanted to protect its residents in its own state courts, it would be unable to do that as well. Thank you, Your Honors, if there are no further questions. Thank you. All right, Mr. Buhling. Thank you, Your Honor. I want to address one thing in particular. This SDI has been referred to quite a bit in this case as Samsung. I want to be very clear that what we're talking about here with Samsung SDI Company is not the Samsung that people ordinarily think about. You made that point. You may continue. The other issue here, Your Honor, is we're not contending that we're not advocating a theory of commerce that departs from established case law. We are relying on the Supreme Court's formulation in Worldwide Volkswagen where the Supreme Court did not speak of knowledge, but of expectation. The expectation on the part of the manufacturer that its product would end up in a particular forum, and that is what is missing here. The other thing I want to address, I believe that counsel mentioned some other cases that counsel characterized as rejecting SDI's theory. Those cases are very different. In those cases, I believe it was LG Chem had actually shipped 18650 lithium ion cells into the forum. That is not this case. Finally, Your Honor, I want to talk about the request for discovery.  declaration is undisputed. It's uncontradicted. Simply saying, we don't believe it or we have some hunch or just some suspicion that he might be lying is not enough. Plaintiff has come forward with no evidence that would contradict the Shin declaration. Any discovery would be a fishing expedition. That is not appropriate. We would ask that the court deny that request. Can your client be sued anywhere in the United States for these exploding battery cases? I don't know, Your Honor, but that's really... The logical conclusion here from your argument is that your client can't be sued anywhere in the United States for any of these exploding battery cases. Actually, I know, Your Honor. What we're contending is that it can't be sued in a state like Indiana where it has never shipped or sold an 18650 battery. We are not speaking to the issue of whether it may or may not be able to be sued in a jurisdiction that is different from that. But the implication of that is that any foreign manufacturer that uses U.S. distributors can't be sued in the U.S. because it never shipped or sold anywhere in the U.S. except perhaps the state where the distributor is located. Actually, no, Your Honor. If there is evidence of targeting, if there is evidence of an expectation on the part of the manufacturer that it serve a specific forum, then that would satisfy the jurisdiction. That suggests that jurisdictional discovery is appropriate here to understand what your client's expectations were. Actually, no, Your Honor. I think that the Shin Declaration shows that there was no expectation of serving the Indiana market. If there are no further questions, thank you very much.